[Civ. No. 19650.   First Dist., Div. Two.   Apr. 12, 1962.]

CITIZENS' FEDERAL SAVINGS AND LOAN ASSOCIA-
TION, Plaintiff and Appellant, v. CITY AND COUNTY
OF SAN FRANCISCO et al., Defendants and Re-
spondents.

Roy D. Reese for Plaintiff and Appellant.

Dion R. Holm, Thomas M. O'Connor, City Attorneys, and Orville I. Wright, Deputy City Attorney, for Defendant and Respondent City and County of San Francisco.

KAUFMAN, P. J.—Appellant, Citizens' Federal Savings and Loan Association, hereafter referred to as Citizens', filed this action, pursuant to section 5096 of the Revenue and Taxation Code, to recover certain taxes allegedly erroneously collected by the respondent, City and County of San Francisco, for the tax years 1955-1956, 1956-1957, and 1957-1958. The trial court dismissed the complaint after granting the city's motion for a summary judgment, pursuant to section 437c of the Code of Civil Procedure. On this appeal, it is argued that: (1) the city erroneously taxed Citizens' leasehold improvements as personal property; (2) Citizens' is not required to exhaust its administrative remedies, as the tax was an erroneous assessment of property which should not have been assessed; and (3) this court should find that the disputed taxes were personal property taxes in order to clarify the issues between Citizens' and the State Franchise Tax Board.

The basic facts are not in dispute. In two leases, Citizens' leased certain premises in San Francisco for its business as a

federal savings and loan association. The first lease covered the ground floor and basement premises at 706 Market Street and was for a term of 15 years, commencing April 1, 1954; the second covered the ground floor premises at 3146 20th Avenue and was for a term of 10 years, commencing December 1, 1955. With the consent of the owners and lessors, Citizens' made certain improvements in each of the leaseholds to enable it to use the premises in its savings and loan association business. In order to present correct statements of conditions to its members to comply with laws and regulations pertaining to federal income tax returns and state franchise tax returns, the cost of these repairs and improvements to the demised premises for each location was carried on the books of Citizens' in two "leasehold improvement accounts," one relating to each location. Citizens' amortized the cost of the leasehold improvements and repairs under the terms of the two leases. In addition, Citizens' owned certain furniture, fixtures and equipment, the cost of which was also carried on its books of account and depreciated for income statement purposes. One-fourth of the yearly unamortized balances of each leasehold improvement account was included in the property statements filed by Citizens' on the first Monday of March for each of the years 1955 to 1958, inclusive.[1] The statement was duly subscribed by an officer of the appellant. Under the category of "Equipment" on the official statement, there was included a value in dollars representing a fixed percentage of the full unamortized or undepreciated cost of the furniture, fixtures and leasehold improvements owned and controlled by the appellant. Thereafter, Citizens' properties were assessed on the unsecured roll for the years in issue and the values on the rolls agreed with the assessed value on the property statement and Citizens' paid a property tax on the basis of the total valuation of its assessed property. Thereafter, Citizens', pursuant to section 23184 of the Revenue and Taxation Code, applied its property tax payments to the city as an offset to its State of California franchise tax liability. On audit by the State Franchise Tax Board, the State disallowed the property tax offset to the extent that it represented taxes on appellant's leasehold improvements. Citizens' then filed its complaint in this action for a refund as against both taxing agencies for a

---

[1]The persons who prepared the statements for the appellant were cognizant of the assessor's formula to the effect that the assessed value of tangible personal property was one-fourth of the cost thereof.

refund of that portion of its taxes which was based on the allegedly erroneous increase in its total assessment due to the allegedly erroneous inclusion of one-fourth of the unamortized balance of each leasehold account. The amounts here involved are as follows: 1955-1956, $1,399.78; 1956-1957, $1,823.06; and 1957-1958, $2,139.39.

Citizens' contends as against the City and County of San Francisco that the property tax had been erroneously assessed and paid, and against the State Franchise Tax Board that the personal property tax offset should be allowed. The issues relating to that portion of the complaint which is against the State Franchise Tax Board were not determined below and are, therefore, not before this court.

The City and County of San Francisco's affidavit in support of the motion for summary judgment states that the motion is made on the ground that the city did not erroneously collect any personal property taxes, and that the assessment rolls for the City and County of San Francisco public records show that the appellant's property was assessed on the unsecured roll[2] for the years specified in its complaint.

On a motion for summary judgment under section 437c of the Code of Civil Procedure, the purpose of the motion is to discover whether or not there are triable issues of fact. If the opposition affidavit sets up facts showing that there are triable issues of fact, such facts must be accepted as true and the motion denied. However, the opposition affidavit must show facts from which it appears that the opposing party has a good cause of action on the merits. On the other hand, if the affidavit in support of the motion is sufficient to support the granting of the summary judgment and if the opposition affidavit does not show any triable issues of fact, then the motion for summary judgment should be granted (*Tell* v. *Taylor*, 191 Cal.App.2d 266-269 [12 Cal. Rptr. 648]).

---

[2]The "unsecured" roll is that part of the roll containing all other property than state assessed property and property the taxes on which are a lien on real property sufficient, in the opinion of the assessor, to secure the payment of taxes (Rev. & Tax. Code, § 109). Every tax on real property is a lien against the property assessed (Rev. & Tax. Code, § 2187). Every tax on improvements is a lien on the taxable land on which they are located if they are assessed to the same person to whom the land is assessed (Rev. & Tax. Code, § 2188). Every tax on improvements assessed to a person other than the assessee of the land on which they are located is a lien on the real property of the owner of such improvements (Rev. & Tax. Code, § 2188.1).

Section 405 of the Revenue and Taxation Code provides that annually the assessor shall assess all the taxable property in his county, except State assessed property, to the person owning, claiming, possessing or controlling it at 12 o'clock meridian of the first Monday in March. To accomplish this task, the assessor takes the written property statement under oath which discloses the property and shows the person owning, claiming, possessing, controlling or managing it (Rev. & Tax. Code, §§ 441, 442).

" 'Property' includes all matters and things, real, personal and mixed, capable of private ownership." (Rev. & Tax. Code, § 103.) ▮▮▮ In this state, all property must be taxed unless an exemption is authorized by the state Constitution or granted by the laws of the United States (*Lundberg* v. *County of Alameda,* 46 Cal.2d 644 at 648 [298 P.2d 1]; Const., art. XIII, § 1c).

The assessment roll shall list all property within the county which it is the assessor's duty to assess (Rev. & Tax. Code, § 601). The local roll must show: "(a) The name and address, if known, of the assessee. (b) Land, by legal description. (c) A description of possessory interests sufficient to identify them. (d) Personal property. A failure to enumerate personal property in detail does not invalidate the assessment. (e) The cash value of real estate, except improvements. (f) The cash value of improvements on the real estate. (g) The cash value of improvements assessed to any person other than the owner of the land. (h) The cash value of possessory interests. (i) The cash value of personal property, other than intangibles. (j) The revenue district in which each piece of property assessed is situated. (k) The total taxable value of all property assessed, exclusive of intangibles. (l) The actual value of solvent credits, after legal deductions for debts. (m) Any other things required by the board." (Rev. & Tax. Code, § 602.)

Land and improvements are separately assessed (Rev. & Tax. Code, § 607) and improvements are assessed by showing their value opposite the description of the parcel of land on which they are located if they are assessed to the same assessee (Rev. & Tax. Code, § 608). Whenever improvements are owned by a person other than the owner of the land on which they are located, the owner of the improvements or the land may file with the assessor a written statement before the

lien date attesting to his ownership, in which event the land and improvements shall not be assessed to the same assessee (Rev. & Tax. Code, § 2188.2).

In view of the above, we think that the trial court properly concluded that there was no triable issue of fact because the issue of whether the inclusion of Citizens' leasehold improvements in the total assessment of Citizens' property resulted in an erroneous collection of taxes was clearly a question of law rather than one of fact.

Citizens' next argues that it was not required to resort to its administrative remedies to the board of equalization before seeking judicial review. Where the owner of property rights claims that the tax assessment overvalued what he owned, he may not attack the determination of the board of equalization in court unless he has fully and fairly presented the question of his property tax to the board. But where the taxpayer attacks the assessment as void because he does not own the property on which the tax demand was made, there is no question of valuation which must be presented first to the board of equalization for correction as a condition for judicial relief (*Parr-Richmond Industrial Corp.* v. *Boyd*, 43 Cal.2d 157, 167 [272 P.2d 16]). While in one sense it is true that almost any mistake which results in an excessive assessment amounts to an overvaluation of the property of a taxpayer, there is a real and distinct difference between those cases in which it may not properly be said that the error is one of overvaluation and those cases in which the overvaluation is a mere incidental result of an erroneous assessment of property which should not have been assessed. Citizens' here argues, of course, that this case falls into the latter category. We cannot agree. It is uncontroverted that the argument centers on leasehold improvements which Citizens' included in its tax statement to the assessor, pursuant to section 2188.2 of the Revenue and Taxation Code. The leasehold improvements were neither tax exempt nor outside the jurisdiction but were real property under the holding of *Trabue Pittman Corp.* v. *County of Los Angeles*, 29 Cal.2d 385 [175 P.2d 512]. Resort to the board of equalization is not rendered unnecessary by the fact that, as in the present case, the error is one in the classification of property. Appellant's failure to make timely application for relief before the board of equalization is fatal to its right to judicial

364

review (*Security-First Nat. Bank* v. *County of Los Angeles,* 35 Cal.2d 319 [217 P.2d 946]).

Judgment in favor of the City and County of San Francisco on its motion for a summary judgment is hereby affirmed.

Shoemaker, J., and Agee, J., concurred.

A petition for a rehearing was denied May 1, 1962, and appellant's petition for a hearing by the Supreme Court was denied June 4, 1962.