[S.F. No. 22721. In Bank. July 30, 1970.]

STENOCORD CORPORATION, Plaintiff and Appellant, v.
CITY AND COUNTY OF SAN FRANCISCO,
Defendant and Respondent.

## COUNSEL

Baker, Ancel & Redmond and Mark G. Ancel for Plaintiff and Appellant.

Thomas M. O'Connor, City Attorney, Donald J. Kropp and John J. Doherty, Deputy City Attorneys, for Defendant and Respondent.

## OPINION

**BURKE, J.**—Plaintiff appeals from a judgment of dismissal entered after the trial court sustained defendant's general demurrer to plaintiff's complaint for the recovery of taxes on its inventory and equipment. The sole question before us is whether the complaint was properly dismissed for failure to allege that plaintiff had exhausted its administrative remedies before the county board of supervisors sitting as a board of equalization. We have concluded that plaintiff had a remedy before the board, and that its failure to exhaust that remedy bars the instant action.

The complaint alleged that in October 1964 plaintiff was notified of a tax deficiency totaling $5,885.70 by reason of the finding of the assessor's auditor that plaintiff had understated the cost of its goods in reporting to the assessor for the fiscal years 1962, 1963 and 1964. The deficiency included a 50 percent penalty for "understatement of values," and an 8 percent penalty for late payment. Subsequently, the assessor eliminated the 50 percent penalty assessment, thereby reducing the deficiency to $3,523.33. According to the complaint, the assessments at issue herein "were based upon the Assessor revising the cost of the goods of Stenocord upward . . ., notwithstanding the fact that Stenocord had properly completed the affidavit of the Assessor and placed its actual cost of the goods thereon. . . ." For example, for the fiscal year 1962-1963, plaintiff allegedly correctly reported its cost at $21,088, and was originally assessed thereon at a 50 percent valuation of $10,544; however, upon audit the assessor subsequently determined that plaintiff's actual cost for this year was $47,822, and reassessed the goods at 50 percent thereof, or $23,911. Thus, according

to plaintiff, "all of said assessments additionally determined by the Assessor to be due as a result of said under-assessment were based upon 50% of the Assessor's opinion of market value, which said market value was based entirely upon the revised costs hereinabove set forth."

According to the complaint, plaintiff ultimately received from the assessor a "Demand for Payment of Unsecured Property Taxes" for each of the three fiscal years in question. These demands totaled $3,523.33, and bore the stamped legend "Penal Assessment," but did not refer to any particular provisions of the Revenue and Taxation Code. Plaintiff paid these bills and on August 25, 1965, filed a claim for refund with the board of supervisors on the theory that the taxes were "erroneously or illegally collected." (Rev. & Tax. Code, § 5096, subd. (b).) The refund claim was rejected on January 10, 1966, and plaintiff filed the instant action shortly thereafter. Plaintiff admittedly has not asked the board of supervisors, acting as a board of equalization, to review the assessor's redetermination of the cost and assessed value of plaintiff's goods.

█ Ordinarily a taxpayer seeking relief from an erroneous assessment must exhaust available administrative remedies before resorting to the courts. (*Star-Kist Foods, Inc.* v. *Quinn,* 54 Cal.2d 507, 509-510 [6 Cal. Rptr. 545, 354 P.2d 1]; *Security-First Nat. Bank* v. *County of Los Angeles,* 35 Cal.2d 319, 320 [217 P.2d 946].) An exception is made when the assessment is a nullity as a matter of law because, for example, the property is tax exempt, nonexistent or outside the jurisdiction (*Parr-Richmond Industrial Corp.* v. *Boyd,* 43 Cal.2d 157, 164-165 [272 P.2d 16]; *Parrott & Co.* v. *City & County of San Francisco,* 131 Cal.App.2d 332, 342 [280 P.2d 881]), and no factual questions exist regarding the valuation of the property which, upon review by the board of equalization, might be resolved in the taxpayer's favor, thereby making further litigation unecessary (*Star-Kist Foods, Inc.* v. *Quinn, supra,* 54 Cal.2d at p. 511; *Security-First Nat. Bank* v. *County of Los Angeles, supra,* 35 Cal.2d at p. 321).

Plaintiff attacks the reassessment herein as a "nullity," relying upon the allegation in its complaint (which we must accept as true, *Flores* v. *Arroyo,* 56 Cal.2d 492, 497 [15 Cal.Rptr. 87, 364 P.2d 263]), that plaintiff correctly reported its costs to the assessor. Among other things,[1] plaintiff contends that the assessor had no statutory authority to reassess its property, penally or otherwise, under such circumstances; that such a reassessment would be "arbitrary" and unconstitutional; and that consequently plaintiff

---

[1]Plaintiff's other contentions regarding the unconstitutionality of penal assessments have been rejected in *L. B. Foster Co.* v. *County of Los Angeles,* 265 Cal.App.2d 24 [71 Cal.Rptr. 16].

was excused from seeking relief from the board of equalization. These contentions are without merit.

■ The fact that the assessor erroneously overvalues property which is otherwise subject to tax does not render the assessment a nullity under the foregoing rule, for disputes regarding valuation are within the special competence of the board of equalization. (*El Tejon Cattle Co.* v. *County of San Diego,* 252 Cal.App.2d 449, 456-458 [60 Cal.Rptr. 586]; *Virtue Bros.* v. *County of Los Angeles,* 239 Cal.App.2d 220, 231-232 [48 Cal.Rptr. 505]; *Lockheed Aircraft Corp.* v. *County of Los Angeles,* 207 Cal.App.2d 119, 131-132 [24 Cal.Rptr. 316]; *Citizens' Federal Sav. & Loan Assn.* v. *City & County of San Francisco,* 202 Cal.App.2d 358, 363-364 [20 Cal. Rptr. 717]; *Marsh Wall Products Inc.* v. *County of Los Angeles,* 193 Cal. App.2d 58, 63 [13 Cal.Rptr. 699]; *Montgomery Ward & Co.* v. *Welch,* 17 Cal.App.2d 127, 133-134 [61 P.2d 790].) If any question of valuation exists, it would be irrelevant that plaintiff also challenges the assessment as "arbitrary" or void on constitutional grounds. (*Security-First Nat. Bank* v. *County of Los Angeles, supra,* 35 Cal.2d 319, 321; *City & County of San Francisco* v. *County of San Mateo,* 36 Cal.2d 196, 201 [222 P.2d 860]; see *Montgomery Ward & Co.* v. *Welch, supra,* at pp. 133-134.) If prior recourse to the board on the question of valuation might have avoided the necessity of deciding the constitutional issue, or modified its nature, plaintiff's action was properly dismissed. (See *Star-Kist Foods, Inc.* v. *Quinn, supra,* 54 Cal.2d 507, 511.)

■ It is evident from the face of the complaint that the dispute herein involved a question of valuation which, if submitted to the board of equalization, might have obviated plaintiff's action. The reassessments were concededly based upon "the Assessor revising the cost of the goods of Stenocord upward. . . ." Plaintiff knew that the assessor had challenged its reported cost figures, had reassessed those figures, and had levied a deficiency based upon the reassessments. Although the precise statutory basis justifying the reassessments and deficiency was not spelled out in the notice or tax bills, plaintiff reasonably could have determined that the assessor was claiming either a penal assessment (Rev. & Tax. Code, § 501 et seq.) or an escape assessment (Rev. & Tax. Code, § 531 et seq.). Under either theory, a remedy was available before the board of equalization. (Rev. & Tax. Code, § 1604.1.)[2]

Thus, at the time of the reassessments, section 503 of the Revenue and Taxation Code provided that "Any property, including intangibles, wilfully concealed, removed, transferred, *or misrepresented* by the owner or his

---

[2]All statutory references herein are to the Revenue and Taxation Code prior to the 1967 amendments thereto.

agent to evade taxation, shall be penally assessed on discovery." (Italics added.) Section 504 provided that "A penal assessment shall not exceed 10 times the value of the property penally assessed . . . ."[3] Therefore, plaintiff reasonably could have assumed that the reassessments were made on the theory that plaintiff had wilfully misrepresented the cost of its goods in reporting to the assessor.[4] Plaintiff cites *Clunie* v. *Siebe,* 112 Cal. 593 [44 P. 1064], for the proposition that a penal assessment for "misrepresenting" property is invalid as a matter of law if the taxpayer had previously disclosed the existence of his property. However, in *Clunie,* the taxpayer had allegedly misrepresented the *value* of his property, a matter ultimately for the assessor himself to decide in the absence of statutory provisions requiring the taxpayer to disclose facts regarding value. *Clunie* would not invalidate a penal assessment based upon misrepresented *costs,* a factual matter which taxpayers must disclose to the assessor under Revenue and Taxation Code section 445. In any event, if in fact plaintiff did not misrepresent the cost of its goods, nevertheless a question of valuation was presented which should have been submitted to the board for review, equalization and adjustment.

Similarly, plaintiff reasonably could have assumed that the reassessments were escape assessments under section 531.1, which provided: "If the assessor requires an assessee to describe personal property in such detail as shows the cost thereof but the assessee omits to report the cost of the property accurately, . . . to the extent that this omission on the part of the assessee causes the assessor not to assess the property *or to assess it at a lower valuation* than he would enter upon the roll were the cost reported to him accurately, that portion of the property as to which the cost is unreported, in whole or in part, may be assessed as property that has escaped assessment." (Italics added.)

Once again, if the assessor were proceeding on the theory of an escape assessment, plaintiff should have brought the matter to the attention of the board of equalization. The fact that the tax bills subsequently received by plaintiff were stamped "Penal Assessments" would not, of itself, render an otherwise proper escape assessment void and uncollectible.[5]

---

[3]In 1963, prior to plaintiff's receipt of the notice of tax deficiency, former section 504 was amended to delete therefrom the additional words "and a penal assessment shall not be reduced by the county board."

[4]Plaintiff alleges that it never received written demand from the assessor to furnish corrected cost figures, a prerequisite to penal liability under former section 501. However, under former section 503, no such demand was required in order to penally assess property wilfully concealed or misrepresented to evade taxation.

[5]That plaintiff was not misled by the assessor's characterization of the assessments is established by allegations in its refund claim, attached to the complaint, which challenged the assessor's authority to levy "a penal or an escaped assessment."

Plaintiff contends that the assessor could not have proceeded legally upon the basis

Therefore, whether the reassessments were penal assessments under section 503 or escape assessments under section 531.1, a question of valuation was thereby presented for review by the board. As stated in former section 1604.1, "An assessment made pursuant to Sections . . . 503 . . . [or] 531.1 . . . shall be subject to review, equalization and adjustment by the county board of equalization."

Plaintiff contends that the filing of its refund claim with the board of supervisors satisfied the requirement that it exhaust its administrative remedies. ■ However, a claim for refund is an adequate substitute for a request for equalization only in those cases wherein the assessment is totally void as an attempt to tax property not subject to taxation, rather than merely an inaccurate assessment of the value of taxable property. (*El Tejon Cattle Co.* v. *County of San Diego, supra,* 252 Cal.App.2d 449, 457-458; *Montgomery Ward & Co.* v. *Welch, supra,* 17 Cal.App.2d 127, 131; see *Stafford* v. *Riverside County,* 155 Cal.App.2d 474, 478-479 [318 P.2d 172].)

■ Since in the instant case a dispute existed as to the correct valuation of taxable property, plaintiff should have requested the board of equalization to review the matter before filing suit. Accordingly, the general demurrer was properly sustained and, upon plaintiff's refusal to amend, judgment was properly entered against it.

The judgment is affirmed.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

---

of an escape assessment as he employed an allegedly excessive 50 percent assessment ratio. Without determining whether or not the ratio used was in fact excessive, we note that a similar argument was rejected as a valid excuse for failing to seek equalization in *Virtue Bros.* v. *County of Los Angeles, supra,* 239 Cal.App.2d 220, 231. There, the court held that recourse to the board was required, since the board might have corrected the excessive ratio without the necessity of litigation.